**James H. Kaster*** (MN #53946)
kaster@nka.com
**David Schlesinger** (AZ #025224)
schlesinger@nka.com
**Lucas J. Kaster*** (MN #396251)
lkaster@nka.com
NICHOLS KASTER, PLLP
4700 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402
Tel: (612) 256-3200

**Anthony S. Petru*** (CA #91399)
petru@hmnlaw.com
**Gavin Barney*** (OR #163382, CA #321880)
barney@hmnlaw.com
HILDEBRAND MCLEOD & NELSON, LLP
250 Frank H. Ogawa Plaza, 4th Floor
Oakland, CA 94612
Tel: (510) 451-6732

*pro hac vice motions forthcoming*

Attorneys for Plaintiff James Blankinship

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| JAMES BLANKINSHIP,<br><br>  Plaintiff,<br><br>v.<br><br>UNION PACIFIC RAILROAD COMPANY., a Delaware Corporation,<br><br>  Defendant. | Case No.<br><br>COMPLAINT FOR DAMAGES<br><br>JURY TRIAL DEMANDED |

Plaintiff James Blankinship ("Blankinship") files this Complaint against Defendant Union Pacific Railroad Co. ("Union Pacific" or "Defendant") for damages resulting from its violation of the Americans with Disabilities Act, 42 U.S.C § 12101 *et seq.*, as amended ("ADA").

1

COMPLAINT FOR DAMAGES

## PRELIMINARY STATEMENT

1. Union Pacific enforces a company-wide fitness-for-duty program ("Fitness-for-Duty"), through which the company imposes a blanket policy automatically removing from service employees who disclose or who Union Pacific suspects have certain health conditions. Union Pacific then subjects employees whom it removes from service to a Fitness-for-Duty evaluation. Union Pacific applies this policy regardless of whether the employee has been safely performing the essential functions of their job. Union Pacific evaluations do not assess whether an employee is capable of safely or effectively performing their work.

2. Employees responsible for train movement must be certified by the Federal Railroad Administration ("FRA"). The FRA allows railroads to certify employees through one of twelve color-vision examinations, including the *Ishihara* test, which consists of a number of colored plates, each containing a circle of dots appearing randomized in color and size, that form a number or shape clearly visible to those without color-vision deficiency, and invisible, or difficult to see, to those who are color-blind or who have color-vision deficiency.[1] Because employees who have color-vision deficiency may nevertheless be able to distinguish between colors, the FRA permits them to be certified through a color-vision field test ("CVFT"). Even employees who the employer deems have not met the employer's requirement to pass a CVFT may be certified and the employee allowed to work when there is reason to believe that they can perform their job's essential functions.

3. Because employees responsible for train movement must be certified, Union Pacific's Fitness-for-Duty includes color-vision testing. In or around April of 2016, Union Pacific replaced its CVFT with a new test – the "Light Cannon" test. The old CVFT used existing train signal masts with actual wayside lights and lenses in the field or railyards;

---

[1] Color-vision deficiency is the inability to distinguish certain color shades under normal lighting conditions. Color blindness is the inability to see colors. Color-vision deficiency is relatively common, *e.g.*, one in twelve men suffer from red-green color vision deficiency. And unlike color blindness, color-vision deficiency does not prevent its sufferers from performing tasks that require them to distinguish between colors.

whereas the Light Cannon test uses a mobile light device that Union Pacific developed in-house. The Light Cannon test does not replicate what employees see in the field, and yet the majority of those who have been subjected to it fail, despite having successfully passed the old CVFT and performed their jobs without missing a signal for years or even decades.

4. In February 2016, several Union Pacific employees commenced a class action disability discrimination lawsuit against Union Pacific, alleging that Union Pacific's Fitness-for-Duty policies and practices constituted a pattern and practice of discrimination under the ADA. *See Quinton Harris et. al. v. Union Pacific Railroad Company*, Case No. 8:16-cv-381 (D. Neb.). The *Harris*-plaintiff's allegations "clearly encompass vision testing as it is included in the FFD program." *Harris,* 2019 U.S. Dist. LEXIS 16113, at *10-11 (D. Neb. Feb 1, 2019).

5. Blankinship is a victim of the same discriminatory Fitness-for-Duty policies and practices alleged in *Harris*. Despite each being qualified and safely performing his job without incident, Blankinship was removed from service for a Fitness-for-Duty evaluation and excluded from work at Union Pacific based on his real or perceived disability, which regards his ability to see color. Blankinship was a putative class member in *Harris*, and now timely brings this action.

## JURISDICTION AND VENUE

6. This action arises under the Federal Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.* As such, this Court has jurisdiction under 28 U.S.C. § 1331.

7. Venue is proper under 28 § 1391(b)(2), because a substantial part of the events or omissions that give rise to this lawsuit occurred in the District of Arizona.

8. Venue is proper under 42 U.S.C. § 2000e-5(f)(3) because a substantial part of the alleged unlawful practices were committed by Union Pacific in the District of Arizona and because, but for the unlawful practices of Union Pacific, Blankinship would have worked in the District of Arizona.

## THE PARTIES

9. Blankinship resides in Tucson, Arizona. Blankinship is an individual with a disability, as that term is defined under the ADA, who, at all times material to this lawsuit, was employed by Union Pacific in the State of Arizona.

10. Union Pacific is a railroad carrier engaged in interstate commerce.

## PROCEDURAL PREREQUISITES AND TIMELY FILING

11. On February 19, 2016, counsel for Blankinship, on behalf of six named plaintiffs and those similarly situated, filed a First Amended Complaint against Union Pacific in the Western District of Washington, alleging disability discrimination in violation of the ADA, along with state law. The case was thereafter transferred to the District of Nebraska. *See Quinton Harris et al. v. Union Pacific Railroad Company*, Case No. 8:16-cv-381 (D. Neb.).

12. Blankinship was a putative class member in the *Harris* case and Blankinship's claim under the ADA were subject to tolling during the pendency of litigating the class-wide claims, pursuant to the Supreme Court's ruling in *Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345 (1983).

13. The *Harris* court certified the class action in February 2019; however, the Eighth Circuit Court of Appeals reversed the certification decision on March 24, 2020.

14. As a result of *Crown Cork* tolling, Blankinship had three hundred (300) days from the date of the Eighth Circuit's order to file a Charge of Discrimination with the Equal Employment Opportunity Commission, "EEOC." Shortly after the Eighth Circuit issued its order reversing class certification, the parties entered into a tolling agreement, extending the time for Blankinship and other putative class members to file EEOC charges by an additional sixty (60) days.

15. Blankinship timely filed a Charge of Discrimination with the EEOC on April 10, 2020. The EEOC issued a determination on November 18, 2020, requiring that Blankinship file a complaint in court by February 16, 2021.

16.     Blankinship timely brings the present action.

## FACTUAL ALLEGATIONS

### *UNION PACIFIC'S FITNESS-FOR-DUTY POLICIES AND PRACTICES*

17.     Union Pacific's Medical Rules outline its Fitness-for-Duty program. The rules require that certain employees, including all employees in Operating Department field positions (such as Transportation, Engineering Services and Mechanical positions), undergo a Fitness-for-Duty evaluation where they report or Union Pacific suspects that they have one of an enumerated list of medical and/or physical conditions.

18.     When a Fitness-for-Duty evaluation is triggered, the employee is removed from work without pay while Union Pacific Health and Medical Services completes the evaluation and until Union Pacific informs the employee's supervisor that the employee has been cleared to return to work.

19.     Union Pacific Fitness-for-Duty includes color-vision testing. Suspected color-vision deficiency triggers a Fitness-for-Duty evaluation.

20.     FRA regulation requires that all locomotive engineers and conductors undergo periodic certification. Under the fitness requirement, an engineer or conductor must have the ability to recognize and distinguish between the colors of railroad signals, as demonstrated through one of twelve forms of color-vision examination. Where an employee fails one of the listed examinations, FRA regulations state that an engineer or conductor may nonetheless be certified through a CVFT or where there is otherwise reason to believe that they can recognize and distinguish between colors of railroad signals.

21.     Union Pacific utilizes the 14-Plate Ishihara test to test for color-vision deficiency for FRA certification. When an employee fails the Ishihara test, Union Pacific subjects the employee, as part of the Fitness-for-Duty process, to a CVFT implemented in or around April 2016, called the Light Cannon Test.

22.     The Light Cannon Test does not simulate real world conditions and does not assess the employee's ability to recognize and distinguish between colors of railroad

1 signals.

2     23.    As a result of the conduct described above, Union Pacific employees who
3 have never had a problem performing the essential functions of their jobs have been
4 removed from work without pay either for an extended period or indefinitely.

5 ***PLAINTIFF JAMES BLANKINSHIP***

6     24.    Blankinship was hired by Union Pacific in Arizona in 2007 and worked as a
7 conductor from June 7, 2007 until approximately January 2017, when he was removed
8 from service.

9     25.    As a conductor, part of Blankinship's job entailed reading and interpreting
10 multicolored railroad traffic signal lights on signal masts. Blankinship safely worked as a
11 conductor for over nine years without misreading a signal.

12     26.    In 2007 Union Pacific administered Blankinship an Ishihara color vision test
13 as a part of his post-hiring physical examination. Blankinship passed the Ishihara test and
14 was allowed to work as a conductor.

15     27.    Between 2007 and 2017, Blankinship took the Ishihara test approximately
16 two more times, including as part of FRA conductor certification. He failed the Ishihara
17 test once and, on that occasion, took and passed a previous Union Pacific CVFT in which
18 Blankinship read and relayed a series of signals from a real railroad signal mast to assess
19 his ability to read and interpret signals in the field.

20     28.    On or about January 3, 2017, Blankinship went to recertify as a conductor.
21 He took and failed the Ishihara Test. On this occasion his test results triggered a Fitness-
22 for-Duty evaluation and Union Pacific removed Blankinship from work as a conductor.

23     29.    On or about January 12, 2017, as part of the Fitness-for-Duty process, Union
24 Pacific administered the Light Cannon test instead of the old CVFT. Union Pacific
25 concluded that Blankinship failed the Light Cannon test.

26     30.    On or about January 17, 2017, Union Pacific issued Blankinship permanent
27 work restrictions prohibiting him from working in any position requiring accurate
28

6
COMPLAINT FOR DAMAGES

1  identification of colored railroad wayside signals, including as a conductor. Union Pacific
2  claimed that these restrictions could not be accommodated.

3    31.    In the time since removing him from service, Union Pacific has persisted in
4  its refusal to allow Blankinship to return to his job as a conductor/brakeman. At all times,
5  Blankinship was capable of performing the essential functions of his job, and he remains
6  able to perform them today.

7    32.    To the extent that Blankinship needed reasonable accommodation, Union
8  Pacific failed to provide one, and failed to even engage in an interactive process regarding
9  what accommodations were possible.

## CAUSES OF ACTION

### COUNT I
### *VIOLATION OF THE ADA*
### *DISABILITY DISCRIMINATION – DISPARATE TREATMENT*

13    33.    Plaintiff incorporates the foregoing paragraphs by reference.

14    34.    The ADA defines a disability as (A) a physical or mental impairment that
15  impairs one or more major life activities; (B) a record of such an impairment; or (C) being
16  regarded as having such an impairment. 42 U.S.C. § 12102(1). An individual is regarded
17  as having such an impairment if they are subjected to an action prohibited under the ADA
18  "because of an actual or perceived physical or mental impairment whether or not the
19  impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(1)(C).

20    35.    At all relevant times, Union Pacific regarded Blankinship as having an
21  impairment and, therefore, Blankinship was an individual with a disability under the ADA.

22    36.    At all relevant times, Blankinship had the requisite skill, experience,
23  education, and other job-related requirements of his positions, and was therefore a qualified
24  individual under the ADA.

25    37.    At all relevant times, Blankinship could perform the essential functions of
26  his position, with or without reasonable accommodation.

27    38.    Section 12112(a) of the ADA prohibits employers from "discriminat[ing]

against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

39. Discriminating against a qualified individual on the basis of disability under Section 12112(a) includes, among other things, "using qualification standards, employment tests or other selection criteria that screen out . . . an individual with a disability . . . unless the standard, test or other selection criteria, as used by the covered entity, is shown to be job-related for the position and is consistent with business necessity." 42 U.S.C. § 12112(b)(6).

40. Union Pacific discriminated against Blankinship on the basis of a real or perceived disability in one or more of the following ways:

    a. Removing Blankinship from service and issuing work restrictions on the basis of his disability;

    b. Failing to utilize alternate clinical tests to the Ishihara Test to determine whether Blankinship can effectively read and interpret railroad signals;

    c. Using a field test that that does not assess whether Blankinship can effectively read and interpret railroad signals;

    d. Failing to otherwise assess whether Blankinship is capable of reading and interpreting railroad signals; and

    e. Using a Fitness-for-Duty evaluation process that screens out qualified individuals with disabilities.

41. Because Union Pacific violated 42 U.S.C. § 12112, Blankinship has suffered and will continue to suffer loss of income, emotional distress, and other damages in an amount in excess of $75,000. Blankinship is also entitled to attorneys' fees and costs incurred in connection with these claims.

42. Union Pacific committed the above-alleged acts with reckless disregard or deliberate disregard for Blankinship's rights and safety. As a result, Blankinship is entitled

to punitive damages.

## COUNT II
### *VIOLATION OF THE ADA*
### *DISABILITY DISCRIMINATION – DISPARATE IMPACT*

43. Plaintiff incorporates the foregoing paragraphs by reference.

44. Blankinship is a qualified individual with a disability within the meaning of the ADA.

45. Discriminating against a qualified individual on the basis of disability includes "using qualification standards, employment tests or other selection criteria that screen out or tend to screen out an individual with a disability or a class of individuals with disabilities unless the standard, test or other selection criteria, as used by the covered entity, is shown to be job-related for the position in question and is consistent with business necessity[.]" 42 U.S.C. § 12112(b)(6).

46. Discriminating against a qualified individual on the basis of disability also includes "utilizing standards, criteria, or methods of administration . . . that have the effect of discrimination on the basis of disability." 42 U.S.C. § 12112(b)(3).

47. Union Pacific discriminated against Blankinship on the basis of disability in one or more of the following ways:

   a. Union Pacific's Fitness-for-Duty policies, including its use of the Light Cannon test, disproportionately and adversely impact qualified individuals with disabilities;

   b. Union Pacific uses qualification standards that screen out or tend to screen out qualified individuals with disabilities; and

   c. Union Pacific uses a Fitness-for-Duty evaluation process that screens out or tends to screen out qualified individuals with disabilities.

48. Union Pacific cannot show that such qualifications standards are job-related and consistent with business necessity.

49. Because Union Pacific violated 42 U.S.C. § 12112, Blankinship has suffered

1 and will continue to suffer loss of income, emotional distress, and other damages in an
2 amount in excess of $75,000. Blankinship is also entitled to attorneys' fees and costs
3 incurred in connection with these claims.

4     50. Union Pacific committed the above-alleged acts with reckless disregard or
5 deliberate disregard for Blankinship's rights and safety. As a result, Blankinship is entitled
6 to punitive damages.

**COUNT III**
*VIOLATION OF THE ADA*
*FAILURE TO ACCOMMODATE*

9     51. Plaintiff incorporates the foregoing paragraphs by reference.

10     52. Blankinship is a qualified individual with a disability within the meaning of
11 the ADA.

12     53. Discriminating against a qualified individual with a disability includes "not
13 making reasonable accommodations to the known physical or mental limitations of the
14 otherwise qualified individual with a disability who is an applicant or employee, unless
15 such covered entity can demonstrate that the accommodation would impose an undue
16 hardship on the operation of the business of such covered entity[.]" 42 U.S.C. §
17 12112(b)(5)(A).

18     54. Union Pacific discriminated against Blankinship by failing to provide
19 Blankinship with reasonable accommodation.

20     55. Because Union Pacific violated 42 U.S.C. § 12112, Blankinship has suffered
21 and will continue to suffer loss of income, emotional distress, and other damages in an
22 amount in excess of $75,000. Plaintiff is also entitled to attorneys' fees and costs incurred
23 in connection with these claims.

24     56. Union Pacific committed the above-alleged acts with reckless disregard or
25 deliberate disregard for Blankinship's rights and safety. As a result, Blankinship is entitled
26 to punitive damages.

# PRAYER FOR RELIEF

**WHEREFORE, Plaintiffs pray for judgment against Union Pacific as follows:**

1. That the practices of Union Pacific complained of herein be determined and adjudged to constitute violations of the ADA;

2. An injunction against Union Pacific and its directors, officers, owners, agents, successors, employees and representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

3. For an award of damages arising from loss of past and future income, emotional distress, and other compensatory damages in excess of $75,000.00;

4. Pre-judgment interest, as provided by law;

5. For Plaintiff's costs, disbursements and attorneys' fees pursuant to law;

6. For an award of punitive damages;

7. For all relief available under the ADA;

8. For such other and further relief available by statute; and

9. For such other and further relief as the Court deems just and equitable.

Date: February 10, 2021

**NICHOLS KASTER, PLLP**

By: s/David E. Schlesinger
James H. Kaster* (MN #53946)
kaster@nka.com
David E. Schlesinger (AZ #025224)
schlesinger@nka.com
Lucas J. Kaster* (MN #396251)
lkaster@nka.com
80 South Eighth Street
4700 IDS Center
Minneapolis, Minnesota 55402-2242
Telephone: (612) 256-3200
Fax: (612) 338-4878

Anthony S. Petru* (CA #91399)
petru@hmnlaw.com

COMPLAINT FOR DAMAGES

Gavin S. Barney* (CA #321880)
barney@hmnlaw.com
**HILDEBRAND, McLEOD & NELSON LLP**
350 Frank H. Ogawa Plaza, 4th Floor
Oakland, California 94612
Telephone: (510) 451-6732
Fax: (510) 465-7023

*  pro hac vice application forthcoming*

Attorneys for Plaintiff James Blankinship

COMPLAINT FOR DAMAGES